T.C. Summary Opinion 2003-107


UNITED STATES TAX COURT



PHILIP AND MARGERY SKALKA, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2952-00S.                    Filed July 29, 2003.


Philip and Margery Skalka, pro sese.

<u>Patricia A. Riegger</u>, for respondent.



GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $4,860 in petitioners' Federal income tax for the taxable year 1997. The cover page of the notice of deficiency shows a deficiency of $14,341 for the year at issue. The $9,481 discrepancy relates to tax previously assessed because of computational errors on petitioners' 1997 Federal tax return. See sec. 6213(b)(1). When issuing the notice of deficiency, respondent inadvertently included the tax previously assessed because of the computational errors in the amount of the deficiency. Accordingly, the amount in dispute determined in the notice of deficiency is $4,860.[1]

In the notice of deficiency, respondent also determined that petitioners failed to report $6,043 of alternative minimum tax (AMT).

Some of the facts in this case have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioners lived in Woodbury, New York.

In the stipulation of facts, respondent concedes that petitioners are entitled to (1) an additional deduction of $300 for State and local income taxes above the amount originally claimed on Schedule A, Itemized Deductions, and (2) a $7 foreign

---

[1] The inconsequential error on the cover page of the notice of deficiency does not affect the validity of the notice. See Stussy v. Commissioner, T.C. Memo. 2002-257.

tax credit.  Petitioners concede in the stipulation that they are not entitled to a miscellaneous itemized deduction of $89.10 claimed on Schedule A.  However, the $89.10 miscellaneous itemized deduction was one of the computational errors that resulted in the $9,481 of tax previously assessed pursuant to section 6213(b)(1).  The parties further stipulated that petitioners made a total of $70,308.20 in Federal tax payments for the year at issue.[2]

At trial, the parties orally stipulated that $32,029 of gain from the sale of business real estate which was not included in income on petitioners' tax return is includable in income as a capital gain.  The testimony of Philip Skalka (petitioner) corroborated this further stipulation.  However, the parties dispute at which capital gains tax rate the $32,029 capital gain is to be taxed.

After the trial, respondent filed an answer seeking an increased deficiency of $8,006, for a total deficiency of $12,866.  See sec. 6214(a).  It is well established that the Court has jurisdiction to review an increased deficiency asserted by the Commissioner at or before the hearing or rehearing.  Sec.

---

[2]  Respondent's recalculation of petitioners' tax liability reflects that petitioners made only $69,829 in Federal tax payments for 1997.  In accordance with the holding in this opinion, respondent shall apply the stipulated tax payment amount of $70,308.20 when preparing the Rule 155 computation.

6214(a); <u>Evans Publg., Inc. v. Commissioner</u>, 119 T.C. 242, 247 (2002).

In petitioners' motion for summary judgment,[3] trial memorandum, and "Addendum to Petitioner's Trial Testimony of 9/9/2002", petitioners request an abatement of all interest associated with the determined deficiency. In their petition, petitioners did not request an abatement of interest, nor did they amend their petition to claim such relief. However, when issues not raised by the pleadings are tried by express or implied consent of the parties, the issues shall be treated as if they had been raised in the pleadings. Rule 41(b). Respondent was on notice before trial that petitioners were requesting interest abatement. Further, respondent did not object at trial when petitioners requested such relief. The interest abatement issue was tried by consent of the parties, and we shall treat that claim as if it had been made in the pleadings, pursuant to Rule 41(b)(1).

On the basis of the above, the issues for decision for the 1997 taxable year are: (1) The capital gains tax rate applicable to petitioners' capital gains; (2) whether petitioners are liable for the AMT; and (3) whether petitioners are entitled to interest abatement.

---

[3] Petitioners' motion for summary judgment was denied on July 8, 2002. See <u>infra</u> p. 7.

On July 6, 1977, petitioners purchased a two-story residential property (investment property) at 7708 Bay Parkway, Brooklyn, New York. For approximately 20 years, petitioners rented the two-family investment property to various tenants. In addition, the testimony of Philip Skalka (petitioner) maintained his dental office on the second floor. Petitioner testified that he depreciated the investment property over a 20-year period.

On October 27, 1997, petitioners sold the investment property for a gross sale price of $297,500. Petitioners reported the property sale on Form 4797, Sale of Business Property. On Form 4797, petitioners reported a cost or other basis in the property of $85,611.69 and depreciation allowed or allowable of $59,187.69. Accordingly, petitioners reported an adjusted basis of $26,242, for a total gain from the sale of $271,076. Petitioners further reported on Form 4797 that $32,029 of the total gain was from section 1250 property. Petitioners subtracted the $32,029 of reported section 1250 gain from the total gain amount to arrive at a capital gain of $239,047. Petitioners included the $239,047 of capital gain as income on their 1997 tax return. However, petitioners did not include the $32,029 of section 1250 gain in income.

Using Schedule D, Capital Gains and Losses, petitioners determined their 1997 Federal income tax using the maximum capital gains rates. In the tax computation, petitioners

reported $27,159 of unrecaptured section 1250 gain, to which they applied a 25-percent capital gains tax rate. Petitioners did not include the $32,029 of reported section 1250 gain in the Schedule D tax computation.

Petitioners did not file a Form 6251, Alternative Minimum Tax--Individuals, with their 1997 tax return, nor did petitioners report any amount of AMT on their tax return for the year at issue.

On October 14, 1998, petitioners submitted a Form 1040X, Amended U.S. Individual Income Tax Return, for the 1997 tax year. In their amended return, petitioners (1) increased their itemized deductions for the additional $300 of State tax paid, and (2) reduced their deductions for the $89.10 miscellaneous itemized deduction to which they are not entitled. In addition, petitioners submitted a self-modified 1997 Form 1040, U.S. Individual Income Tax Return, that excluded all capital gains from income and contained a separate 20-percent capital gains tax computation. In the explanation of changes on the amended return, petitioners assert that long-term capital gains should not be included in adjusted gross income and can be taxed at a maximum rate of only 20 percent.

The Internal Revenue Code (Code) does not explicitly provide for the filing or acceptance of amended returns. Badaracco v. Commissioner, 464 U.S. 386, 393 (1984). Although the

Commissioner has permitted the use of amended income tax returns, amended returns are creatures of administrative convenience, and, except as otherwise provided by regulations, the Commissioner is free to accept or reject them. Terrell v. Commissioner, T.C. Memo. 1986-507. Here, respondent did not accept petitioners' amended return.

On May 23, 2002, petitioners filed a motion for summary judgment with the Court. In the motion, petitioners argued for interest abatement, relief from AMT, and a maximum capital gains tax rate of 20 percent. Petitioners stated in the motion that capital gains should not be included in adjusted gross income and the capital gains tax should be determined at a 20-percent rate separate from the regular tax computation. Petitioners' motion for summary judgment was denied on July 8, 2002.

At trial, petitioners raised the same capital gains tax arguments asserted in their amended tax return and motion for summary judgment. Additionally, petitioners claimed that they are entitled to interest abatement because of ministerial and managerial errors committed by employees of the Internal Revenue Service.

## Capital Gains Tax Rates

Petitioners argue that the $32,029 of gain not previously included in income should be taxed at only 20 percent. Respondent asserts that the $32,029 is unrecaptured section 1250

gain subject to a section 1(h) tax rate of 25 percent.

Petitioners assert that long-term capital gains are taxed at a maximum 20-percent rate; therefore, the entire gain from the sale of their investment property should be taxed at only 20 percent. While the Taxpayer Relief Act of 1997 (1997 Act), Pub. L. 105-34, sec. 311, 111 Stat. 831, did reduce the maximum capital gains rate on net capital gains from 28 percent to 20 percent, petitioners' assertion fails to take into consideration all of the relevant changes made by the 1997 Act.

The 1997 Act made several changes to the capital gains tax. For the 1997 tax year, the capital gains tax rates vary depending on the type, nature, and amount of the gain. In addition, the length of time the asset was held before its disposition and the date of the disposition affect the capital gains tax rates for 1997. Section 1(h), in pertinent part, provides as follows:

SEC. 1(h). Maximum Capital Gains Rate.--

(1) In general.--If a taxpayer has a net capital gain for any taxable year, the tax imposed by this section for such taxable year shall not exceed the sum of--

(A) a tax computed at the rates and in the same manner as if this subsection had not been enacted on the greater of--

(i) taxable income reduced by the net capital gain, or

(ii) the lesser of--

(I) the amount of taxable income taxed at a rate below 28 percent, or

(II) taxable income reduced by the adjusted net capital gain, plus

(B) 25 percent of the excess (if any) of--

(i) the unrecaptured section 1250 gain (or, if less, the net capital gain), over

(ii) the excess (if any) of--

(I) the sum of the amount on which tax is determined under subparagraph (A) plus the net capital gain, over

(II) taxable income, plus

(C) 28 percent of the amount of taxable income in excess of the sum of--

(i) the adjusted net capital gain, plus

(ii) the sum of the amounts on which tax is determined under subparagraphs (A) and (B), plus

(D) 10 percent of so much of the taxpayer's adjusted net capital gain (or, if less, taxable income) as does not exceed the excess (if any) of--

(i) the amount of taxable income which would (without regard to this paragraph) be taxed at a rate below 28 percent, over

(ii) the taxable income reduced by the adjusted net capital gain, plus

(E) 20 percent of the taxpayer's adjusted net capital gain (or, if less, taxable income) in excess of the amount on which a tax is determined under subparagraph (D).

Accordingly, petitioners' claim that their entire gain from the sale of the property is taxed at a maximum rate of 20 percent

is without merit.  Petitioners' claim is made without a clear understanding of section 1(h) and its interaction with section 1250.

For the 1997 tax year, the maximum capital gains rate is generally 20 percent on the gain from the disposition of a capital asset held more than 18 months and sold after July 28, 1997.  However, the 20-percent rate does not apply to unrecaptured section 1250 gain, which is subject to a 25-percent tax rate.  See sec. 1(h)(1)(B).

Pursuant to the pertinent part of section 1231(b), "property used in the trade or business" means real property used in a trade or business, held for more than 1 year, and subject to the allowance for depreciation.  Since petitioners' investment property meets these criteria, the property is section 1231 property.  Pursuant to section 1231(a)(3)(A)(i), the term "section 1231 gain" means any recognized gain on the sale or exchange of property used in a trade or business.  Likewise, the term "section 1231 loss" means any recognized loss from a sale or exchange of property used in a trade or business.  Sec. 1231(a)(3)(B).  If, as here, the section 1231 gains exceed the section 1231 losses for the year, the gains and losses shall be treated as long-term capital gains and long-term capital losses,

respectively. Sec. 1231(a)(1). Accordingly, the gain petitioners recognized on the sale of the investment property is long-term capital gain.

Pursuant to section 1250(c), section 1250 property is any real property subject to the allowance for depreciation that is not section 1245 property. The investment property in the hands of petitioners was real property subject to the allowance for depreciation. Further, petitioners' investment property is not of any kind described in section 1245(a)(3). Therefore, petitioners' investment property is also section 1250 property.

Gain realized on the disposition of section 1250 property is recaptured as ordinary income, rather than capital gains, to the extent that the depreciation amount allowed or allowable exceeds the amount of depreciation that would have resulted under the straight-line method. See sec. 1250(a). Pursuant to section 1250(a)(1)(A), the section 1250 gain shall be recognized as ordinary income notwithstanding any other provisions of subtitle A of the Code. Therefore, since petitioners' section 1231 property is also subject to depreciation recapture under section 1250, the amount of the long-term capital gain would be reduced by the amount of section 1250 gain recaptured at ordinary income tax rates.

The 1997 Act amended section 1(h) to include section 1(h)(1)(B), which taxes unrecaptured section 1250 gain at a

capital gains tax rate of 25 percent. Pursuant to the pertinent part of section 1(h)(6)(A), the term "unrecaptured section 1250 gain" means the amount of long-term capital gain which would be treated as ordinary income if section 1250(b)(1) included all depreciation. Accordingly, under this definition, unrecaptured section 1250 gain would include all the depreciation allowed or allowable on the property.

The unrecaptured section 1250 gain definition in the 1997 Act effectively eliminates the possibility of any section 1250 gain's being recaptured at ordinary income tax rates because all the depreciation is considered unrecaptured section 1250 gain, taxed at 25 percent. See sec. 1(h)(1)(B). However, since the section 1250 gain rules apply notwithstanding any other provisions of subtitle A of the Code and section 1(h) is included in subtitle A, the section 1(h)(6)(A) definition of unrecaptured section 1250 gain cannot override the section 1250(a) ordinary income treatment of section 1250 gain recapture.

Recognizing that this conflict existed, Congress included technical corrections in the Internal Revenue Service Restructuring and Reform Act of 1998 (1998 Act), Pub. L. 105-206, sec. 6005(d), 112 Stat. 800, which revised and clarified the definition of unrecaptured section 1250 gain under the 1997 Act.

Under the 1998 Act, the definition of unrecaptured section 1250 gain was amended to include long-term capital gain that is

not otherwise treated as ordinary income.  Pursuant to section 6024 of the 1998 Act, 112 Stat. 826, the amendment to the definition took effect as if included in the 1997 Act. Therefore, for the 1997 tax year, if long-term capital gain is subject to section 1250, the section 1250 gain is recaptured at ordinary income tax rates, and the remaining depreciation claimed is unrecaptured section 1250 gain taxed at the 25-percent rate.

Here, the parties have stipulated that none of the long-term capital gain attributable to depreciation claimed on the investment property is section 1250 gain recaptured at ordinary income tax rates.  Petitioners reduced their basis in the property by $59,188[4] of depreciation claimed over a 20-year period.  On Schedule D, petitioners reported only $27,159 of the total depreciation claimed as unrecaptured section 1250 gain. Therefore, the remaining $32,029 of depreciation claimed is subject to the section 1250 gain rules and the unrecaptured section 1250 gain rules.  However, since the parties have stipulated that none of the $59,188 of depreciation is to be recaptured as ordinary income under section 1250, the entire $59,188 is considered unrecaptured section 1250 gain.

---

[4]  This amount is rounded to the nearest dollar.

Accordingly, the $32,029 of gain at issue is unrecaptured section 1250 gain subject to the capital gains tax rate of 25 percent. See sec. 1(h)(1)(B).

Capital Gains Included in Adjusted Gross Income

Citing the 1997 Act, petitioners argue that by law the maximum long-term capital gains tax rate is 20 percent. Petitioners claim that including capital gains in their adjusted gross income results in a loss of deductions pursuant to sections 68(a) and 151(d)(3). Petitioners further argue that this loss of deductions (1) increases the effective tax rate on their capital gains above 20 percent, and (2) affects the AMT. Petitioners conclude that since their capital gains tax rate is effectively increased above 20 percent, respondent has not correctly determined their tax within the law.

Contrary to petitioners' interpretation, gain from the sale of investment property is includable in a taxpayer's adjusted gross income (AGI) and subject to the tax imposed under section 1. Pursuant to section 61(a)(3), "gross income" includes gains derived from dealings in property. The term "adjusted gross income" means gross income minus various deductions. See sec. 62(a). For a taxpayer who itemizes deductions, "taxable income" means gross income minus allowed deductions. Sec. 63(a). In addition, the section 68 limitation on itemized deductions and the section 151(d)(3) phaseout of the exemption amount are

determined on the basis of AGI.  Accordingly, the gain petitioners derived from the sale of their investment property is includable in petitioners' gross income, AGI, and taxable income. Further, the gain is included when determining various limitations and phaseouts based on AGI.

Petitioners do not contest that the gain from the sale of the investment property is long-term capital gain; petitioners argue only that long-term capital gains should be excluded from gross income.  However, pursuant to section 1222(3), the term "long-term capital gain" means gain from the sale of a capital asset held for more than 1 year if, and to the extent, such gain is taken into account in computing gross income.  Further, section 1231 gains are treated as long-term capital gains only if, and to the extent, the gains are taken into account in computing gross income.  Sec. 1231(a)(4)(A)(i).  The Code requires petitioners' long-term capital gains to be included in their gross income.  Accordingly, petitioners' claim that long-term capital gains should not be included in income is contrary to the Code and completely without merit.

Alternative Minimum Tax

The AMT provisions of the Code, sections 55-59, were enacted to establish a floor for tax liability so that a taxpayer will pay some tax regardless of the exclusions, deductions, and credits otherwise available to him under the regular income tax

statutes. See S. Rept. 99-313, at 518 (1986), 1986-3 C.B. (Vol. 3) 1, 518. The AMT provisions accomplish this goal by eliminating favorable treatment given to certain items for purposes of the regular income tax. See secs. 55(b)(2), 56, 57, and 58.

Pursuant to section 55(a), the AMT is applicable only if, and to the extent that, the "tentative minimum tax" exceeds the taxpayer's "regular tax".[5] The starting point in computing the AMT liability is determining the alternative minimum taxable income (AMTI), which equals the taxpayer's taxable income for the year with the adjustments provided in sections 56 and 58, and increased by the amount of tax preference items set forth in section 57. To determine the taxable amount of AMTI, the AMTI is reduced by an exemption amount, which for taxpayers filing a joint return is $45,000, subject to a gradual phaseout of the exemption amount as AMTI exceeds $150,000. See sec. 55(d)(1), (3). The applicable AMT rates are then applied to the AMTI, as reduced by the exemption amount, to determine the tentative minimum tax (TMT). See sec. 55(b). For taxpayers reporting capital gains on Form 1040, the TMT is the lesser of (1) the amount of AMT determined without regard for section 55(b)(3), or

---

[5] For petitioners, "the term 'regular tax' means the regular tax liability for the taxable year (as defined in sec. 26(b))." Sec. 55(c)(1).

(2) the amount of AMT determined applying the maximum rate of tax on net capital gains, pursuant to section 55(b)(3). The taxpayer's regular income tax amount is then compared to the TMT. If the TMT is greater than the regular income tax, the difference is added to the regular tax amount to determine the final tax liability for the taxable year. See sec. 55(a).

Petitioners argue that since their capital gains should not be included in income, the capital gains should not be included when determining AMTI. As stated above, petitioners' capital gains are included in their taxable income. Since the AMTI is determined by making adjustments to taxable income, petitioners cannot exclude their capital gains for AMT purposes. Petitioners' argument is without merit and contrary to the AMT provisions.

We find no fault with respondent's application of the AMT provisions or the method by which respondent computed petitioners' AMT liability. However, the computations for taxable income and AMT submitted with respondent's answer are computed without regard for the $300 of additional State income tax allowed as an itemized deduction. Because this adjustment affects taxable income and the AMT, the $300 additional itemized deduction must be included in respondent's Rule 155 computation.

Petitioners further argue that the AMT was created to apply only to high-income taxpayers who pay little or no tax because of

their ability to use tax preferences, and, accordingly, the AMT is not applicable in this instance because petitioners paid over $70,000 in Federal income tax for the year at issue. This argument is also without merit. If a taxpayer is subject to the regular tax, the taxpayer is also subject to the AMT. Sec. 55(b)(2). However harsh and unfair the AMT may seem to petitioners, Congress enacted the law, and we have no authority to disregard the AMT Code provisions. See Holly v. Commissioner, T.C. Memo. 1998-55.

Interest Abatement

The Tax Court is a court of limited jurisdiction, and we may exercise our jurisdiction only to the extent authorized by Congress. Naftel v. Commissioner, 85 T.C. 527, 529 (1985). Whether this Court has jurisdiction is fundamental and may be raised by a party or on the Court's own motion. Fernandez v. Commissioner, 114 T.C. 324, 328 (2000); Naftel v. Commissioner, supra at 530.

Consistent with section 6404(g)(1), the Court's jurisdiction depends on a valid final determination letter and a timely filed petition for review. See Rule 280(b); Gati v. Commissioner, 113 T.C. 132, 134 (1999); White v. Commissioner, 109 T.C. 96, 98 (1997). The Commissioner's final determination letter "is a

prerequisite to the Court's jurisdiction and serves as a taxpayer's 'ticket' to the Tax Court." <u>Bourekis v. Commissioner</u>, 110 T.C. 20, 26 (1998).

There is nothing in the record to indicate that respondent intended for the notice of deficiency issued to petitioners to be considered a final determination letter under section 6404(g). See <u>id.</u>; <u>Ho v. Commissioner</u>, T.C. Memo. 1998-363. Further, the parties stipulated that petitioners did not receive a written notice of determination from respondent denying a request for interest abatement.

Petitioners assert that their interest abatement claim is properly before the Court because (1) interest was included in the notice of deficiency and a proposed stipulation-decision document, and (2) an Appeals officer verbally denied their interest abatement claim. However, because of the absence of a final determination letter denying a request for abatement of interest, the Court lacks jurisdiction under section 6404(g) to decide this issue.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>under Rule 155</u>.